Good morning. So, and I suppose that on Judge, you're pro bono counsel? That's correct, Your Honor. All right. Well, that we, you're not through our pro bono program, but you're doing this pro bono anyway, correct? That's correct. All right. Well, I'll thank you on behalf of the entire panel in advance. We appreciate lawyers stepping up and assisting us in deciding cases. Thank you, Your Honor, and good morning. May it please the Court, I'm Jeff Benner. I'm here on behalf of Carlos Ceron-Martinez. Petitioner's here to ask that this matter be remanded back down to the immigration judge. Remand is proper and necessary here, but both the immigration judge and the BIA failed to consider whether there was pattern or practice evidence that persons in the situation of the petitioner, which is somebody who's HIV positive and suffering from AIDS, face risk of persecution in the future should he be deported to Mexico. Now, the immigration judge, we know, did not consider pattern or practice evidence because the immigration judge decided that petitioner, that persons with HIV AIDS who are not gay, which is the petitioner's position, do not qualify as a cognizable, protectable group under the statute. So naturally, he didn't reach pattern or practice evidence because once he reaches that conclusion, it's not necessary. And the BIA concluded, moreover, the applicant has not made a pattern or practice or disfavored group claim. Exactly. So the BIA overturned the IJ and said he is a member of a protectable group, that you don't need to be gay for HIV AIDS sufferers to be recognizable. But then the BIA, they should have sent it back down at that point to say, okay, we've determined that he is a member of a protectable group. Send it back down to the immigration judge and do the analysis. But instead they said- Well, frankly, just a minute, counsel. I'm not sure I quite agree with you. The BIA said the applicant has not made a pattern or practice or disfavored group claim and therefore did not analyze either. So what I've got to decide, it seems to me, is whether there is any pattern or practice claim or disfavored group claim that he ever alleges. Petitioner absolutely made a pattern or practice claim. He submitted over 100 pages of evidence to the immigration law judge of country conditions in Mexico of both HIV AIDS sufferers and gay men and- Are you really talking about the last briefs or the first brief? He made them in each. He submitted three briefs. Oh, now, just a minute. I'm being very specific. He filed one brief and it went back. Are you really even indicating that I have to look at that first brief? I think the question of whether it was raised below simply was the administrative court on notice that he wanted- That's why I asked the question. It doesn't seem to me that the first brief is any argument of being on notice. If you're not going to get to the second brief, then we're not going to have any notice because the first brief was filed and it was sent back. It was off the table. You're going to have to tell me where in the second brief, where did he say anything about pattern or practice in the second brief? That's December 2013, I think. Or April 2014. Or April 2014. No briefs prior to that. Well, first, I don't understand, Your Honor, as to why the first brief where he repeated- It was sent back. The case was sent back. It's no more on file. They did more stuff underneath. There's nothing to be looked at. It's done. It's dead. It's in the file. Now we're going another appeal from what they did, and that was the December 2013 brief. That's the first one I'm going to look at. Well, in the December brief, well, in the third brief, he did state that the risk of persecution for the respondent as a man with AIDS is extremely high. Second, the evidence that he submitted to the IJ was still the evidence before the BIA in all instances, and it's very puzzling that the BIA would say we've looked at the country evidence but only referenced one letter from December 2013. Well, just a minute. Didn't Ceron hire counsel who files the brief? So Mr. Ceron Martinez represented himself before the IJ throughout the process. He then submitted pro se two briefs to the BIA, and notwithstanding that he was representing himself pro se and that deference should be granted to briefs by pro se litigants, he put in specific references repeatedly in his first brief to the BIA. Now, if this Court thinks that he didn't-the fact that he may not have recognized he needed to repeat everything in his second brief- He hired counsel who filed the brief. He hired-so my firm came in after the first two briefs were filed and only came in late in the stage to file a supplemental brief on the specific question- So at least as to the supplemental brief, I don't have to give him any deference because he has counsel who's filing it. I would agree with that, Your Honor. Okay. So what is there in the December 2013 brief which exhausts this claim? It's on the record at Appellate Record 80 is where it begins. The first heading is Respondents' Persecution as an Account of His Membership in a Social Group. It's 84 on my record. It begins at 84, Your Honor. Well, but just because he suggests that that is there, I mean, we're looking at pattern or practice. We're not talking about social group. We're talking about pattern or practice here. Well, if you look at this brief on page 84, he says he's eligible for withholding of removal under B3, and then he cites that his life or freedom would be threatened in such a country on account, and he cites the 1208.16b. And as the Court knows, look, under 1208.16b, there are two ways that he can show the risk of future persecution. He can show it by past persecution, or he can show it by whether or not there is a risk of future persecution based on pattern or practice evidence. I mean, frankly, Your Honor, I don't understand even the statement that he didn't make a claim. I am not aware of any requirement that there needs to be a succinct and separate plea to the Court to say, please look at all the factors that under the statute, H.C.F.R. 1208.16, the Court shall evaluate. Just a minute. You've got to at least give the BIA some idea that this is a pattern or practice claim. That's the only way you exhaust it. Otherwise, they have no notice upon which to make the decision. But how would the BIA not be on notice from the first brief? I simply don't understand that. Okay, but this is assuming they have to consider the October 2013 brief after it's already over and the new briefs are filed. I mean, in order for you to prevail on exhaustion, do all three briefs have to be considered together? I think we're asking you, can you make a stand-alone argument that it's raised in December 2013 and April 2014? Or do you have to have October 2013 morphed in? And if so, I think Judge Smith is saying, you know, if that's already over and then you file new briefs, that's like saying, well, I raised it in a case before. Well, I believe the exhaustion standard here, the exhaustion standard is simply, was the court below on notice that this could be even an issue? But that's kind of like, you remember that Johnny Carson skit, the great Carmack or Carnack or whatever, and you put a card up here and you're supposed to know what someone's thinking? So the fact that somewhere back on October 13, even though it went to the court up here and went back, the BIA is supposed to know that he wants to talk about that as well as the two other briefs that he's filed subsequently. In the BIA's decision, I simply do not understand how the BIA could think that there's such a thing as considering future persecution without looking at pattern of practice evidence when there's 100 pages of it in the record. I mean, what could they possibly think was the relevance of the 100 pages of articles about persecution in Mexico if not to consider future persecution? How could they say we looked at future persecution? And in their own ruling, they misstate the rule. They say in order to show future persecution, you have to show you will be singled out. But that's half the rule. But I guess, okay, so if we don't consider October 2013, you're still saying you've exhausted? Absolutely. It's inherent in the future persecution analysis. At any time, the rule says if you, under the future persecution section, there's two ways you can show it, by individually being singled out or showing pattern of practice. There's no requirement that you have to explicitly say to the court, I would like you to consider pattern of practice evidence. But the respondent, representing himself pro se in the October brief and by implication in the later brief, said it repeatedly. He begged the court to consider it. Do you want to reserve any time? I would like to reserve my time, yes, please. Thanks. Good morning, Your Honors. I may please support Michael Heiss on behalf of the respondent, the Attorney General of the United States. I will also focus on the pattern of practice claim, considering apparently we're not going to discuss the question regarding the truth of his testimony or the agency's alleged failure to assume the truth thereof. Something Your Honor was talking about earlier, Judge Smith, about the standard of review and also regarding a possible harmless error discussion here. Clearly, we have an individual that didn't have counsel and then does have counsel. So we essentially have two phases of a case. We have multiple briefs going back and forth, but ultimately in none of them does he ever suggest, I am raising a pattern of practice claim. Well, October 2013, you could sort of, do you think that's his best shot? Yes. Is it his best shot? Is it enough, though? Something Your Honor was also mentioning earlier. Is the agency on notice? Has the agency been put on notice to discuss a certain issue? Well, should we consider the October 2013 in deciding what the BIA is on notice of? Given that it was sent back to the immigration judge, I would submit no, Your Honor. But even if it were, we have several reasons to not be too concerned about it. Something else Judge Smith was talking about earlier is the harmless error consideration. Based on this court's case law in Castro-Martinez, talking about the situation generally as it affects similarly situated individuals, could he have established this claim under the facts as presented? No. So assuming he even tried, we would end up with the same result here. Well, let me look at this. If I'm looking at the December 2013 and the April 2014 briefs, an applicant need not show that she will be singled out individually for persecution if the applicant establishes there's a pattern of practice and the applicant establishes his or her own inclusion in an identification with that group. Okay, so then I look. Why aren't Cerrone's statements and documents that were submitted to suggest there's a widespread discrimination against persons with AIDS meet this test? Aren't these statements consistent with the pattern of practice allegation?  No, no, the statements in the brief. There were in December 2013 statements and documents that were submitted to suggest there was widespread discrimination against persons with AIDS. And there are also statements in there that I've got AIDS. Why is this not consistent with the pattern of practice argument? It could be consistent with the pattern of practice argument except they were raised in the context of a particular social group argument. This Court has an extensive body of case law discussing both standards. They are obviously similar. You're talking about groups of individuals. I think the BIA determined that Mexican men living with HIV and AIDS in Mexico is a social group, and you're not cross-appealing that, right? No, no, absolutely not. Okay, so if basically that's there, why just doesn't it make sense that that wouldn't be the end of the inquiry? Which inquiry, Your Honor? Well, the pattern of practice. Wouldn't you just lead into the pattern of practice? Well, they are two separate inquiries. Right, but if he wins on the social group, then he doesn't just automatically win. Well, perhaps it helps to take a step back there. For a particular social group analysis, it's axiomatic that the group cannot be defined by the fact that it is persecuted. The establishment of a group then begs the question of whether or not that group or this individual has demonstrated a nexus of persecution because of membership in that group. A disfavored group analysis or a pattern of practice claim involves a whole separate analysis. It's similar, but it essentially assumes that these individuals are somewhat routinely subjected to persecution because of their group membership. So it's a different analysis. They have to demonstrate individualized risk and things like that. That's Tempe, Bolon, Wakari, Lolong, what have you. Those are separate from a particular social group analysis. It seems to me, and I'm just wanting to hear what you're going to say about this. Cerrone talks about a social group analysis, and I'm sure that's not pattern of practice. He also talks about disfavored group in his briefs, and yet there's no evidence about a disfavored group analysis was ever raised. But what he says in order to get to those points is the worry to me. He says a lot of statements, a lot of documents to suggest there's widespread discrimination about people with AIDS and that he's in the group. That seems to be a pattern or practice argument. If it's enough, if the court is troubled by that, the government certainly would welcome a remand for the agency to further discuss this question, unless the court agrees that it's a harmless error situation based on Castro-Martinez, which discussed nearly identical facts. Let me ask you another question on a question he did not really discuss. The IJ found that this petitioner was truthful, right? Yes, sir. And finding this person was truthful, then the IJ looks at the kind of things that were going on here, and I'm worried that the IJ did not give that particular petitioner the full benefit of his truthful finding. Respondent described how he told the hospital staff that he wasn't feeling good because this had already been a few months without my medication, and he continued on to testify that he told them that I was full-blown AIDS. The immigration judge's dismissal of respondent's testimony as purely speculation and conjecture, therefore, is clearly erroneous and prejudices the respondent's claim of persecution. My worry about that is the same. I read from Saron's brief. If I am held truthful and there's no evidence on the other side about what the hospital thought or did not think, how is it that the IJ or the BIA could suggest that it is then speculation and conjecture? It seems to me that it's truthful testimony and no testimony against it. In my court, we just said no foundation, but nobody said that here. So here we are. What is the emphasis of what I've got to give to that truthful testimony? I absolutely understand Your Honor's concern. The controlling statute, first of all, puts the burden of proof on the alien to prove his claim of past persecution and future persecution. This is only a withholding of removal matter, so he has to prove that it is more likely than not that he faces future persecution as to the future standard. I agree with that. So the statute, 8 U.S.C. 1158 B-1, B-I, and I-I, which is directed for withholding is under 1231 B-3C, points back to the asylum statute, requires that testimony be both credible and persuasive. So credible testimony, yes, is important, but the question is whether or not it's persuasive. Is it enough? Well, could it be that he, the IJ, believes he thought that's what happened, but then the IJ thought that because he didn't have government ID that that's why it happened? Well, that was his own testimony. Does that mean? That was Petitioner's own testimony was that he was told by the hospital that he was denied care because he lacked identification. Right, but what I'm saying, if he's truthful, from his perspective, he thinks that it was, what do you call it, sort of an employment law, that it's protectual. You know, he's saying, yes, that's what they told me, but I don't think that's really why. But what did he offer to prove that belief? The burden is on. But his truthful testimony. Yes. That's what he offered. So his belief is true. His truthful testimony. Right. Now, if I look at TARUBAC, T-A-R-U-B-A-C, versus the INS, there we had a similar type situation. The petitioner was truthful, and he testified about the presence of a nonpolitical motive or not. And we said, hey, if he had truthful testimony and there's no evidence on the contrary, you've got to adopt his truthful testimony, and you've got to go forward. When we went to Sebastian Sebastian versus INS, we said, where the asylum seeker testifies he was persecuted on account of a political opinion and the IJ makes an express finding the testimony was credible, the petitioner has met his burden of establishing asylum eligibility, even if there was also evidence of a nonpolitical motive. The truthfulness of the petitioner's testimony is the question. It's not whether it's dispositive, however. That establishes the subjective component, and this Court has consistently recognized the separation between the subjective and objective components for establishing asylum or withholding of remuneration. Well, but the problem here is, Counselor, nobody ever focused on that in this opinion at all. Because it was not called upon to do so, which is the original argument is whether or not he raised this issue to the agency. Yes, he argued that the weight of his testimony was not enough. If I don't agree with you that it was not in front of there, do I need to remand this back to the BIA to provide a reasoned explanation of why they did not accept his truthful testimony? The judge did discuss the evidence offered by the government on cross-examination regarding Mexico's seguro popular. I can't help but say, do I need to remand? You can say yes or no and then give your reason for it. I understand, Your Honor. It's remand required. We were cross-examiners, so yes. I mean, I'm glad that the good judge here has sustained my objection. No, Your Honor. I just have one other question, and this wasn't ever mediated, right? No, this particular case was not. Is there, you know, and I was trying to look, and the record's a little bit sparse as far as that goes. Is this someone that ever had any legal status? He entered the country in 1978. When he was 11, but he's not. But was he ever an LPR? And then he got removed, so he's never had any legal status? As far as I know, in the record, Your Honor, there's no indication. So would that be something that might make it not less likely that mediation wouldn't be a possibility here? His main problem is that he's a priority two for removal, given his nine drug-related offenses. Okay, so that's his mediation problem. Yes. Okay. There was also a motion to reopen filed with the board that was since denied, and there was no petition for review of that decision, so presumably all these questions were raised there, and the board has had an opportunity to address them and still did not find it in his favor.  Thank you. Thank you, Your Honors. All right. Since we took counsel over, I'll give you two minutes for rebuttal. Thank you. First, on your last point, I have not seen in the record any evidence of anyone raising mediation as a possibility. It's incorrect. He's had nine prior drug offenses. That's, I think, counsel was referring to testimony. He's been arrested nine times. I'm aware of three prior convictions that are all now misdemeanors. Since the passage of Prop 47 in California, we've brought these issues before the board in seeking to get bond for a petitioner who's been incarcerated for almost five years. But to finish, look, petitioner's life is at stake here, Your Honors. I think he has a right to do and full fair process, here, before they reach a decision on either future persecution or past. Deference should be afforded to him as a pro se litigant. It, frankly, never occurred to me that the October brief, which repeatedly over and over again says, please consider my future persecution pattern of practice evidence, would be disregarded as notice. I don't see the relationship between that and the purpose of notice, which is the BIA could never have addressed the issue. So every case that was appealed to me as a district judge gave me notice that when that petitioner comes back again, I have notice of everything he said in his past brief. That's what you're arguing? I think they were on notice of the issue. I mean, I had many plaintiffs come into my courtroom and sue this guy and the next guy and the next guy. And every time they come back, I'm to have notice of what he said before? But it was the same case, Your Honor. The same? It isn't the same. The first one was sent back. He won. It was sent back to have a review. And now he has a chance to come again. And it was sent back for further clarification. The Court said you haven't given any detail on past or future persecution. Please give us more detail. And then the Court did. But regardless of whether there was notice, I think, in those briefs, I think the fact that he submitted all this evidence was more than sufficient. It's in the statute that they should consider pattern of practice evidence. On the past persecution, I agree with Your Honor, that they didn't just not dismiss his credible testimony. They reached a conclusion directly contrary to his testimony regarding what happened at the hospital. He's the only witness at the hospital. He's the only person who was there. And yet, the I.J. reached the conclusion that the reason that the hospital denied him care was distinctly not because he had HIV-AIDS. And there was just nothing in the record to support that. And it need only find that his perception that there was a nexus is just one of the central reasons he was denied care. So I agree with Your Honor on those points. And sure, ma'am, on that point as well. Thank you both for your helpful argument in this matter. As well, we thank you again for doing the pro bono work. This matter will stand submitted.
judges: D.W. Nelson, Callahan, N.R. Smith